IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

J.O.,

    Plaintiff,

v.                                                                     No. 1:23-cv-01021-KG-JMR

BOARD OF EDUCATION OF ALBUQUEQRUE
PUBLIC SCHOOLS and DANNY ALDAZ,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on three motions for judgment on the pleadings filed by Defendant the Board of Education of Albuquerque Public Schools ("APS"). Docs. 158–60. For the reasons below, the motions are granted on Counts Two, Three, and Four.

*I.*     *Background*

The Court draws this case's background from the pleadings, viewing them in favor of the nonmovant. *E.g.*, *Benzor v. Geico Cas. Co.*, 2021 WL 4439789, at *1 n.1 (D. Colo.).

Plaintiff alleges that her second-grade teacher, Defendant Danny Aldaz, sexually assaulted her during the 2012–13 school year at Helen Cordero Elementary. Doc. 1-2 at 4. During that school year, Aldaz "repeatedly sexually assaulted" Plaintiff "on, at least, twenty occasions...in his classroom." *Id.* Defendant Aldaz also assaulted Plaintiff "in a storage closet located in his classroom" and when he was "alone with her in his classroom." *Id.* at 5. Aldaz "treated [Plaintiff] favorably" by granting her "better grades than other students" and consistently "would also make [Plaintiff] student of the week." *Id.* Plaintiff has continued "feelings of distrust and sadness" because of the "assault(s) in her classroom by her teacher at such a young age." *Id.* at 6.

1

Plaintiff sued Aldaz and APS in New Mexico state court in October, 2023. *Id.* at 1. The case was removed to this Court a month later. Doc. 1 at 1.

Plaintiff raises three claims against APS. First, Plaintiff alleges that APS violated her due process right "to be free from intrusions to her bodily integrity" under 42 U.S.C. § 1983. *Id.* at 8. Specifically, Plaintiff alleges that APS "failed to adequately screen...train and supervise Defendant Aldaz during his tenure as a teacher licensed and employed by Defendant APS." *Id.* Plaintiff alleges that because APS "knew or should have known of the predatory actions of Defendant Aldaz prior to and during his employment...its utter failure to protect" Plaintiff was the result of "deliberate indifferen[ce] to [her] constitutional rights." *Id.*

Second, Plaintiff alleges that APS violated her rights under Title IX, 20 U.S.C. §§ 1681–89. *Id.* Plaintiff argues that APS "had actual or constructive knowledge" of the abuse by Defendant Aldaz against her and "was deliberately indifferent...and maintained customs and policies which permitted or condoned sexual abuse of students by staff and teachers during school hours and school activities." *Id.* at 9–10. As a result, Plaintiff contends that APS "deprived [her] of benefits under Title IX, and subjected her to discrimination on the basis of her sex." *Id.* at 10.

Third, Plaintiff alleges that APS violated the New Mexico Tort Claims Act ("NMTCA") by neglecting its "duty...to exercise reasonable care in the maintenance and operation of Helen Cordero Elementary School." *Id.* at 11. Plaintiff alleges that maintaining and operating the premises includes a duty "to protect minor students...from sexual assaults, batteries, abuse, or harassment from other persons." *Id.* at 12. Plaintiff alleges that this duty included "supervis[ing] teachers...adopt[ing] and implement[ing] proper safety policies...investigat[ing] and act[ing] upon any suspicion or reports" of improper sexual conduct. *Id.* at 11–12. Because APS

"breached its duties of care," Plaintiff contends, they are "jointly and severally liable for all injuries and damages caused...pursuant to the doctrines of vicarious liability and respondeat superior." *Id.*

Defendant APS filed three motions for judgment on the pleadings. Docs. 158–60. First, APS argues that Plaintiff's § 1983 claim fails to plausibly allege "an official [APS] policy of deliberate indifference to sexual abuse" and "failed to allege two elements of a custom-based § 1983 claim." Doc. 160 at 1. APS also contends that the § 1983 claim is "in fact, a claim for negligent hiring...and there is no liability for negligence under § 1983." *Id.* Second, APS argues that Plaintiff's Title IX claim fails because Plaintiff did not allege that APS had "actual knowledge of Defendant Aldaz's alleged misconduct" or that "APS was deliberately indifferent." Doc. 158 at 1. Third, APS argues that Plaintiff's NMTCA claim fails because it "in reality" consists of "negligent supervision" and "vicarious liability," two claims for which the NMTCA "does not waive governmental immunity." Doc. 159 at 1. Plaintiff opposed all three motions, Docs. 172–74, and APS replied, Docs. 183–84, 189.

## II.    *Legal Standard*

Motions for judgment on the pleadings are considered under the same standard as Rule 12(b)(6). *Jacobsen v. Deseret Book*, 287 F.3d 936, 941 n. 2 (10th Cir. 2002). When the factual allegations of a complaint fail to "state a claim to relief that is plausible on its face," dismissal is warranted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not contain detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545. The allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* In addition to the complaint, the district court "may

consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

### III.     Analysis

For the reasons below, the Court grants APS judgment on the pleadings on Plaintiff's (A) § 1983 claim, Count Two; (B) Title IX claim, Count Three; and (C) NMTCA claim, Count Four.

####     A.     Plaintiff's § 1983 Claim

Judgment on the pleadings is granted on Plaintiff's § 1983 claim. Section 1983 creates a cause of action for federal constitutional violations against persons acting "under color of" state law. 42 U.S.C. § 1983; *see McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011). State school districts and their employees may be held liable under § 1983. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999); *see also Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978).

To hold a school district liable under § 1983, a plaintiff must demonstrate that the actions that allegedly violated their constitutional rights "are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *Murrell*, 186 F.3d at 1249. Without such an official policy, plaintiffs may still establish liability if the discriminatory practice "is so permanent and well settled as to constitute 'custom or usage' with the force of law." *Id.*; *see also Starrett v. Wadley*, 876 F.2d 808, 820 (10th Cir. 1989) ("Even if acts of harassment do not rise to the level of 'official policy,' it is still possible that a widespread and persistent practice...could constitute the 'custom' of the municipality."). To hold a school district liable based on a custom, a Plaintiff must demonstrate:

> (1) the existence of a continuing, persistent, and widespread practice of unconstitutional misconduct by the school district's employees;

>   (2) deliberate indifference or tacit approval of such misconduct by the school district's policymaking officials (board) after notice to the officials of that particular misconduct; and
>
>   (3) that the Plaintiff was injured by virtue of the unconstitutional acts pursuant to the board's custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

APS argues that Plaintiff "does not adequately allege...that APS had an official policy of deliberate indifference to sexual harassment or abuse" and that to the extent that Plaintiff urges liability based on a custom of unconstitutional conduct at APS, "Plaintiff's pleading is insufficient as a matter of law." Doc. 160 at 6. The Court agrees. Plaintiff does not allege that APS had an official policy of deliberate indifference to sexual abuse that caused the violation of her constitutional rights. In addition, Plaintiff's complaint does not plausibly allege that APS had notice of Defendant Aldaz's unconstitutional acts or that APS policymakers displayed deliberate indifference or tacitly authorized the violation of Plaintiff's rights. *E.g.*, *Armenta as next friend of H.A. v. Indep. Sch. Dist. No 5 of Garvin Cnty.*, 2024 WL 3089658, at *6 (W.D. Okla.) ("But, as alleged, none of the school's policies or customs were the 'moving force' behind [Plaintiff's] sexual harassment or assault.").

Plaintiff's counterarguments are unpersuasive. Plaintiff concedes that her § 1983 claim is "not based on an official policy" but argues that APS' "custom of failing to train and supervise" made it "plainly obvious" that Aldaz would be able to commit sexual abuse. Doc. 174 at 17. There is no indication, however, that APS knew about Aldaz's misconduct toward Plaintiff or that APS demonstrated approval or indifference of Defendant Aldaz's misconduct through its decision-making authority. Plaintiff fails to plausibly allege that there was a "pattern of persistent and widespread unconstitutional practices that had become so permanent and well-

5

settled as to have the force and effect of law." *Gates*, 996 F.2d at 1042.  Even if Plaintiff could eventually demonstrate some negligence on the part of APS for failing to investigate rumors of inappropriate conduct by Aldaz, "liability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by a defendant" and not isolated negligence.  *Id.* at 1043.  Defendant APS is therefore entitled to judgment on the pleadings on Plaintiff's § 1983 claim.[1]

### B.     *Plaintiff's Title IX Claim*

Judgment on the pleadings is also granted for APS on Plaintiff's Title IX claim.  Title IX prohibits that any person in the United States "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity."  20 U.S.C. § 1681.  School districts may be held liable under Title IX when they fail to respond to unlawful harassment.  *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999).  School districts, however, "may be liable in damages under Title IX only for its own misconduct."  *Id.* at 640.

To hold a school district liable under Title IX, a plaintiff must allege that the district "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school."  *Murrell*, 186 F.3d at 1246.  The first two elements "require that a school official who possessed the requisite control over the situation had actual knowledge of, and was deliberately indifferent to, the alleged harassment."  *Id.* at 1247.  A school official with the requisite control is a person who "has the authority to halt

---

[1] Plaintiff requests that the Court convert APS' motion to one for summary judgment because APS "stepped outside the pleadings" by attaching portions of their staff handbook to their motion, Doc. 160.  The Court declines to do so.  Courts may consider documents referenced in the complaint, and Plaintiff's complaint mentioned APS' "policy" multiple times.  Doc. 17 at ¶¶ 51, 52, 64, 66, 73, 75, 80.

known abuse." *Id.* Actual notice "requires more than a simple report of inappropriate conduct by a teacher." *Escue v. N. OK Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006). However, the standard does not "set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." *Id.* Constructive notice, that is, that the district should have known about the harassment, does not satisfy the actual notice requirement. *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1175 (10th Cir. 2007); *e.g.*, *M.T. v. Olathe Pub. Schs.* 2018 WL 1847036, at *4 (D. Kan.) ("[N]owhere does Plaintiff allege that the School District, or an appropriate person employed by the School District, had actual knowledge of harassment suffered by [plaintiff] until *after* the single incident of sexual assault on which this case is based."); *see also Escue*, 450 F.3d at 1153 (alleged prior instances that are too dissimilar, too infrequent, or too distant in time fail to provide actual knowledge).

APS argues that Plaintiff "fails to allege that APS had actual knowledge of Defendant Aldaz's misconduct." Doc. 158 at 4. The Court agrees. Plaintiff alleges that APS "had actual or constructive knowledge that Defendant Aldaz was sexually harassing and abusing female students" because APS received "numerous reports that Defendant Aldaz was engaging in sexually inappropriate behavior with female students" over the course of his career. Doc. 1-2 at 4, 9. Plaintiff's conclusory allegation of misconduct by Defendant Aldaz over the span of his career, without identifying an appropriate official, what that official had notice of, or when that official obtained notice, serves at best as constructive knowledge to APS and not actual knowledge.

Plaintiff contends in response that she "properly alleged that Defendant APS was on notice" because APS "repeatedly ignored the warning signs and the readily observable" behavior by Defendant Aldaz. Doc. 173 at 6. Plaintiff's argument that APS should have known about

Defendant Aldaz's abuse is unpersuasive and fails to satisfy the actual, rather than constructive, notice requirement of abuse toward Plaintiff.

The Court takes judicial notice of Defendant Aldaz's criminal conviction in state court for misconduct similar to the misconduct alleged in this case. *See State v. Aldaz*, A-1-CA-41575 (2025) (unpublished); *see also United States v. Ahidley*, 486 F.3d 1184, 1192 n.4 (10th Cir. 2007) (a court may take judicial notice of public dockets). Even so, the allegations in this case fail to plausibly allege that APS had actual knowledge of Defendant Aldaz's misconduct in the years leading up to and alleged here. As a result, APS is entitled to judgment on the pleadings on Plaintiff's Title IX claim.

### C. *Plaintiff's NMTCA Claim*

Finally, APS is entitled to judgment on the pleadings on Plaintiff's NMTCA claim. The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act," and "no other claim…may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim." NMSA 1978, § 41-4-17 (Cum. Supp. 1976). "Public employee means an officer, employee or servant of a governmental entity." *Id.* "Unless the NMTCA contains a waiver of immunity," a plaintiff "may not sue…for a damage claim arising out of violations of rights under the New Mexico Constitution." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1251 (D.N.M. 2010).

The NMTCA waives immunity for liability "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." NMSA 1978, § 41-4-6 (Cumm. Supp. 1976). New

8

Mexico courts have interpreted "operation and maintenance" broadly. *See Upton v. Clovis Mun. Sch. Dist.*, 140 N.M. 205 (2006). In *Upton*, the New Mexico Supreme Court held that a public school's failure to follow "appropriate safety procedures"—including actively ignoring information about a medical condition provided by the student's parents, creating a foreseeable risk by ignoring the information, and failing to follow through with proper emergency procedures—was the kind of "operation and maintenance" claim for which sovereign immunity is waived by the NMTCA. *Upton*, 140 N.M. 205 ¶ 21.

Allegations of negligent supervision, however, do not trigger the NMTCA's waiver of sovereign immunity without more. *Id.* ¶ 16. New Mexico courts require "far more than a single failure of oversight"; they require negligence that created "a far worse position than the reasonable and expected risks of school life." *Id.* ¶¶ 18, 21. In *Upton*, that meant multiple school officials failing "to implement [plaintiff's individualized education program], to respond appropriately to the specific information it was given about [plaintiff's] condition, and to implement the specific assurances given to [plaintiff's parents] about the care the school was to provide." *Id.* Once plaintiff suffered a medical emergency, "no one called 911 in a timely manner" and was "never administered CPR." *Id.*; *see also Callaway v. New Mexico Dep't of Corr.*, 117 N.M. 637 (Ct. App. 1994) (prison officials knowingly allowing violent gang members to mingle with the general prison population was more than negligent supervision for purposes of the immunity waiver). On the other hand, the "absence of adequate supervision," without evidence of negligence in maintaining the premises, was not a "dangerous condition" for which sovereign immunity had been waived. *Espinoza v. Town of Taos*, 120 N.M. 680 ¶ 4 (1995).

APS argues that Plaintiff's NMTCA claims "either amount[s] to a claim of negligent supervision or [is] conclusory." Doc. 159 at 5. The Court agrees. The crux of this claim is one

of negligent supervision. Plaintiff alleges that APS "had a further duty to supervise their employees" and that supervision includes a duty to "adopt...appropriate policies and procedures" and "act upon any suspicions or reports of improper sexual assaults." Doc. 1-2 at 12. These allegations fail to satisfy the requirements of *Upton*. There, the school had knowledge of a student's medical condition, failed to implement agreed upon accommodations for the condition, and negligently responded to the student's medical emergency. *Upton*, 140 N.M. 205 ¶ 21. The negligence by multiple school officials in *Upton* was so comprehensive that it created a dangerous condition on the entire premises for students with medical conditions. Here, even reading Plaintiff's complaint liberally, school officials had no contemporary knowledge of Defendant Aldaz's abuse of Plaintiff. Failing to take appropriate and reasonable supervisory actions to proactively prevent unknown abuse amounts to negligent supervision, a claim for which immunity is not waived.

In her response, Plaintiff urges the Court to analogize the facts here to those in *VanHorn v. Carlsbad Mun. Schs.*, where New Mexico's Court of Appeals reversed a trial court decision and applied § 41-4-6's waiver. 2024-NMCA-035 (2024). *VanHorn* is inapposite and similar to *Upton*. In *VanHorn*, a school was notified of a student's medical condition, and multiple officials failed to convey or administer medically required accommodations limiting the student's physical activity, causing a string of events resulting in the child's injury on the school playground. *Id.* at ¶ 2. Plaintiff fails to plausibly allege specific facts that transform her claim from negligent supervision of Defendant Aldaz to an operational failure by school personnel. APS is entitled to judgment on the pleadings on Plaintiff's NMTCA claim as well.

## IV. Conclusion

For the reasons above, the Court grants APS judgment on the pleadings for APS on Counts Two, Three, and Four, Docs. 158–60. Plaintiff may file an amended complaint addressing only her § 1983, Title IX, and NMTCA claims against APS within 21 days of this order. *See* Fed. R. Civ. P. 15(a)(2).

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.