IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

J.O.,

       Plaintiff,

v.

                                         No. 1:23-cv-01021- KG-JMR

BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS,
and DANNY ALDAZ,

       Defendants.

### DEFENDANT BOARD OF EDUCATION OF ALBUQUERQUE PUBLIC SCHOOLS' MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING INDEMNIFICATION AND PUNITIVE DAMAGES

Throughout litigation of this matter, Plaintiff J.O. has taken the position that Defendant Board of Education of Albuquerque Public Schools ("APS") is obligated to pay any judgment that may be entered against Defendant Danny Aldaz under Section 1983, including any award of punitive damages against Mr. Aldaz. Plaintiff's position is based on Sections 41-4-4(C)-(D) of the New Mexico Tort Claims Act ("TCA"), which purport to require that governmental entities "shall pay" "any settlement or any final judgment" and "any award for punitive or exemplary damages" against a public employee for violations of federal law, provided that the employee was "acting within the scope of his duty" when the unlawful act occurred. 1978 NMSA, §§ 41-4-4(C)-(D).

As discussed herein, §§ 41-4-4(C)-(D) cannot be enforced against APS because (1) state law cannot create vicarious liability or indemnification obligations with respect to a Section 1983 judgment, and (2) even if state law were relevant, it would be pre-empted by federal law. In addition, § 41-4-4(C) cannot be enforced against APS under the Anti-Donation Clause of the New Mexico Constitution because any obligation of a municipal employer to pay a punitive damages award against a public employee based on that employee's allegedly criminal conduct involves an unconstitutional allocation of public funds for private purposes. *See* N.M. Const., art. IX, § 14.

1

Accordingly, APS respectfully requests that the Court enter an Order granting judgment on the pleadings as to any claim that APS should be obligated to pay a judgment of compensatory and/or punitive damages that may be entered against Mr. Aldaz under Section 1983.

Pursuant to D.N.M.LR-Civ. 7.1(a), counsel for APS contacted Plaintiff's counsel and counsel for Mr. Aldaz seeking concurrence on this Motion. Neither party concurs in this motion.

## I.    BACKGROUND

This action arises from Plaintiff J.O.'s allegations that she was sexually abused by a former APS teacher, Defendant Danny Aldaz, during the 2013-14 school year, when J.O. was a student in Mr. Aldaz's second-grade classroom at Helen Cordero Elementary School. *See* Compl. ¶¶ 19-20 [Doc. 17].[1] Plaintiff did not disclose the abuse to anyone until 2020 or 2021, after Mr. Aldaz had been placed on leave by APS due to reports that he had inappropriately touched female students at a different school. *See* J.O. Dep. at 36:24-37:8, 37:24-39:4, 47:21-48:7, attached as **Ex. A**; Ojeda Dep at 101:15-102:25, 43:14-44:25, attached as **Ex. B**. During her deposition, J.O. admitted that no one could have known of her abuse in 2013-14 because she intentionally concealed it. Ex. A, J.O. Dep. at 71:12-25. Nevertheless, Plaintiff brought multiple claims against APS—under Section 1983, Title IX, and the New Mexico Tort Claims Act—in which she alleged that (1) APS should have known about and prevented the abuse, and (2) APS's and Mr. Aldaz's conduct caused psychological injuries and other damages. *See* Compl. [Doc. 17]. This Court entered judgment on the pleadings as to all three claims against APS on February 11, 2026. Memorandum Opinion, filed 2/11/26 [Doc. 231].

Plaintiff also brings claims against Mr. Aldaz for violation of her Fourteenth Amendment

---

[1] Plaintiff incorrectly alleges that she was Mr. Aldaz's student in 2012-13. APS records establish that she was in Mr. Aldaz's class in 2013-14. Rivera Aff'd ¶ 8, attached to APS's Mot. for Summary Judgment on Plaintiff's Claim under the New Mexico TCA as Ex. B [Doc. 211].

due process rights under Section 1983, Compl. ¶¶ 36-46 [Doc. 17], and for various common-law torts,[2] Compl. ¶¶ 83-96 [Doc. 17]. Plaintiff seeks punitive damages against Mr. Aldaz in connection with the Section 1983 claim. Compl. ¶ 45 [Doc. 17]. She also alleges that APS should be jointly and severally liable for damages that may be awarded against Mr. Aldaz. Compl. ¶ 81.

The Parties have participated in one unsuccessful settlement conference and have scheduled a private mediation for February 20, 2026. However, the Parties cannot rationally assess the value and collectability of Plaintiff's claims until the Court clarifies whether APS has an obligation to pay a judgment that may be awarded against Mr. Aldaz under Section 1983. Resolution of this issue is critical in light of APS's recent dismissal from this case, which not only affects APS's insurance coverage with respect to the claims against Mr. Aldaz, but also precludes APS from presenting a defense in the trial of this matter. Accordingly, APS respectfully requests that the Court enter an Order clarifying that the New Mexico TCA cannot obligate APS to pay a Section 1983 judgment against Mr. Aldaz.

## II.    STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated under the same standard applicable to motions to dismiss under Rule 12(b)(6). *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). Thus, in ruling on a motion for judgment on the pleadings, courts should evaluate the "legal sufficiency of the allegations contained within the four corners of the complaint." *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)

---

[2] These tort claims are barred by Section 41-4-17 of the TCA, which provides that the TCA "shall be the exclusive remedy against a . . . public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a . . . public employee . . . whose act or omission gave rise to the suit or claim."

(discussing standard under Rule 12(b)(6)). To survive the motion, a complaint must contain "enough facts that, if assumed to be true, state a claim to relief that is plausible on its face." *See Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). A claim is facially plausible when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Although the complaint need not contain "detailed factual allegations," it must set forth more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III.    ARGUMENT

### A.  Introduction

The TCA provides that governmental entities acting within the scope of their duties generally are immune from tort liability, except as waived by limited statutory exceptions. NMSA 1978, § 41-4-4. *See also* NMSA 1978, § 41-4-2(A) (declaring it to be "the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the [TCA] and in accordance with the principles established in that act"); *Kreutzer v. Aldo Leopold High School*, 2018-NMCA-005, ¶ 43, 409 P.3d 930 ("Under the TCA, the rule is immunity; waiver is the exception." (quotes omitted)). The statute reflects a balance between the unfairness that can arise from strict application of sovereign immunity and the principle that the "government should not have the duty to do everything that might be done" because "the area within which the government has the power to act for the public good is almost without limit." *Kreutzer*, 2018-NMCA-005, ¶ 43 (quoting § 41-4-2).

Consistent with these goals, the TCA imposes fixed caps on compensatory damages that can be recovered against governmental entities. NMSA 1978, § 41-4-19(A)-(B). These caps are "a

natural extension of a long-held practice and public policy of limiting damage awards against government entities." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 24, 125 N.M. 721. *See also id.* ¶ 23; § 41-4-2(A). The TCA also prohibits the recovery of punitive damages in any action for which immunity has been waived under the TCA. NMSA 1978, § 41-4-19(D) ("No judgment against a government entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages[.]"); *Torrance Cnty. Mental Health Program, Inc. v. N.M. Health & Environment Dep't*, 1992-NMSC-026, ¶ 16, 113 N.M. 593; *Tafoya v. State*, 517 F. Supp. 3d 1250, 1283 (D.N.M. 2021). This reflects a long-standing "general rule" that punitive damages are not recoverable from a municipality such as APS—absent an express statutory declaration to the contrary—because "punitive damages are intended to punish, and taking them from the municipality would be to penalize the taxpayers who had no part in the commission of the tort." *See Faber v. King*, 2015-NMSC-015, ¶¶ 23-25, 348 P.3d 173 (quoting with approval *Brown v. Village of Deming*, 1952-NMSC-042, ¶ 32, 56 N.M. 302); *Torrance Cnty.*, 1992-NMSC-026, ¶ 27. Thus, although the TCA permits private parties to bring a limited number of tort claims against governmental entities and actors, it protects public funds by placing significant limitations on recoverable damages.

Despite this balanced statutory scheme, § 41-4-4(C) of the TCA states that "[a] governmental entity shall pay any award for punitive or exemplary damages awarded against a public employee" under federal law, such as Section 1983, "if the public employee was acting within the scope of his duty." Similarly, § 41-4-4(D) provides that a governmental entity "shall pay any settlement or any final judgment entered against a public employee" for a violation of any right secured by the United States Constitution that occurred "while the public employee was acting within the scope of his duty." Taken together, these provisions appear to require that a

municipality must pay any judgment (including punitive damages) entered against a public employee under Section 1983, provided that the employee acted within "the scope of his duty" when the unlawful act occurred. *Loya v. Gutierrez*, 2015-NMSC-017, ¶ 11, 47, 350 P.3d 1155.

As explained herein, however, §§ 41-4-4(C)-(D) cannot be enforced against APS in this matter because (1) federal law—not state law—governs vicarious liability and indemnification in connection with claims under Section 1983, (2) to the extent §§ 41-4-4(C)-(D) are relevant to Plaintiff's Section 1983 claim, they are pre-empted by federal law, and (3) § 41-4-4(C) is unenforceable under the Anti-Donation Clause of the New Mexico Constitution. Accordingly, APS respectfully requests that this Court enter an Order clarifying that APS has no obligation to pay any judgment that may be entered against Mr. Aldaz under Section 1983.

### B. Municipalities Cannot Be Held Vicariously Liable For Damages under Section 1983.

Section 1983 "authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federal protected rights." *Tafoya v. New Mexico*, 517 F. Supp. 3d 1250, 1274 (D.N.M. 2021); 42 U.S.C. § 1983. The statute "did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights." *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002) (internal quotes omitted). In order to state a claim under Section 1983, a plaintiff must "plead that each Government official defendant, **through the official's own individual actions**, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692-93 (1978). Thus, although municipalities may be sued directly for their own conduct under Section 1983, *Monell*, 436 U.S. at 690-91, they may not be held vicariously liable for the conduct of their employees. *Monell*, 436 U.S. at 691 ("[T]he language of Section 1983, read against the background of . . . legislative history, compels the conclusion that Congress did not intend municipalities to be

6

held liable unless some action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory."); *id.* at 694 (municipality "may not be sued under Section 1983 for an injury inflicted solely by its employees or agents").

Even when a municipality has been sued for its own conduct under Section 1983, it may not be held liable for punitive damages. In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), the Supreme Court analyzed this question in detail and concluded that neither the language and history of Section 1983 nor public policy would support punitive damages awards against municipalities. The Court began its analysis by recognizing that, at the time Section 1983 was enacted in 1871, "the immunity of a municipal corporation from punitive damages at common law was not open to serious question." *Id.* at 260 (noting that "the courts that had considered the issue prior to 1871 were virtually unanimous in denying such damages against a municipal corporation"). This common-law rule turned on the public policy rationale that allowing punitive damages against a municipality would punish innocent taxpayers rather than the culpable parties. *Id.* at 261-63 ("In general, courts viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised."). The Supreme Court determined that Congress did not intend Section 1983 to "disturb the settled common-law immunity" because the statute does not reference punitive damages in any way. *Id.* at 263-66.

The Supreme Court went on to consider the policy implications of permitting punitive damages awards against municipalities, and concluded that public policy does not support the imposition of such damages. *Id.* at 266. In particular, the Court determined that neither of the goals

of punitive damages—punishing responsible tortfeasors and deterring unlawful conduct—would be served by holding municipalities liable for punitive awards. *Id.* at 266-67. With respect to the first goal, the Court reiterated that "an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort." *Id.* at 267 (noting that "[n]either reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers"). In addition, because punitive damages "are assessed over and above the amount necessary to compensate the injured party," a punitive damages award against a municipality would be "a windfall to a fully compensated plaintiff" and would likely be "accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill." *Id.* Thus, to the extent Section 1983 intends to punish wrongdoers,[3] the Court found that it should be "the wrongdoer himself" who suffers the consequences of his unlawful conduct. *Id.* ("A municipality, however, can have no malice independent of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself.").

With respect to the second goal of punitive damages—deterrence—the Supreme Court noted that "it is far from clear that municipal officials . . . would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed based on the wealth of their municipality." *Id.* at 268-69. In contrast, a "more effective means of deterrence" is to allow punitive damages "against the offending official, based on his personal financial resources." *Id.* at 269-70 ("The Court previously has found . . . that a damages remedy recoverable against individuals is more effective as a deterrent than the threat of damages against a government employer. We see no reason to depart from that conclusion here, especially since the imposition

---

[3] In *City of Newport*, the Court indicated that punishment is not a prominent goal of Section 1983. Instead, the statute focuses on compensation and deterrence. 453 U.S. at 267-68.

of additional penalties would most likely fall upon the citizen-taxpayer."). Such awards against individual officials provide "sufficient protection against the prospect that a public official may commit recurrent constitutional violations by reason of his office" and do not threaten local treasuries. *Id.* at 269-71.

Following *City of Newport*, it remains well-settled law that plaintiffs such as J.O. may not recover punitive damage awards from municipal entities such as APS under Section 1983. *E.g.*, *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985); *Whitson v. Bd. of Cnty. Commissioners of Cnty. of Sedgwick*, 106 F.4th 1063, 1073 (10th Cir. 2024).

### C.  Sections 41-4-4(C)-(D) of the TCA Cannot Modify Federal Law.

Sections 41-4-4(C)-(D) of the TCA seek to expand the remedies available under Section 1983 by making municipalities vicariously liable for compensatory and punitive damages awarded against municipal employees. These provisions are invalid and unenforceable as a matter of law because (1) state vicarious liability law may not be incorporated into Section 1983, and (2) federal law—not state law—governs indemnification under Section 1983, and does not impose any indemnity obligation on APS. Moreover, even if state law were relevant to the question of vicarious liability/indemnity, it would be preempted by federal law.

### 1.   *Section 1988 does not incorporate state remedies into Section 1983.*

As discussed above, Section 1983 does not permit vicarious liability or punitive damages awards against municipalities. Under Section 1988, however, if the Civil Rights Acts (including Section 1983) are "deficient in the provisions necessary to furnish suitable remedies," they may be supplemented by common law, "as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988. Pursuant

to this provision, state law remedies may be grafted onto Section 1983 only if (1) Section 1983's remedies are "deficient," and (2) the state law remedies at issue are not inconsistent with federal law. Neither requirement can be satisfied in this case.

*Moor v. Alameda County*, 411 U.S. 693 (1963), governs the analysis of whether §§ 41-4-4(C)-(D) of the TCA can be used to augment Plaintiff's remedies under Section 1983. In *Moor*, the petitioners argued that state law making a municipality vicariously liable for the acts of its employees should be incorporated into Section 1983. 411 U.S. at 689-99. In particular, they took the position that Section 1983's remedies against individual municipal employees were "deficient" because those employees likely were judgment-proof and because the law existing at that time precluded direct Section 1983 claims against municipalities. *Id.* at 699. The Court rejected these arguments for two reasons. First, the Court determined that Section 1988 does not "authorize the wholesale importation into federal law of state causes of action" for vicarious liability. *Id.* at 703-04. Second, the Court emphasized that Section 1988 only permits the incorporation of state remedies when the state law "is not inconsistent with the Constitution and laws of the United States." *Id.* at 706. The Court determined that state law on vicarious liability could not be incorporated into Section 1983 because it ran contrary to then-existing federal law holding that municipalities could not be sued under Section 1983. *Id.* at 706.

Here, as in *Moor*, Plaintiff seeks to supplement Section 1983 with state law that, in effect, renders APS vicariously liable for both compensatory and punitive damages awarded against Mr. Aldaz. *See* § 41-4-4(C) (governmental entity "shall pay any award for punitive or exemplary damages awarded against a public employee . . . acting within the scope of his duty"); § 41-4-4(D) (governmental entity "shall pay any settlement or any final judgment entered against a public employee . . . acting within the scope of his duty"). But Section 1988 does not permit the

incorporation of new, state-law causes of action against municipalities. *Moor*, 411 U.S. at 702-04.

Furthermore, § 41-4-4(D) cannot be incorporated into Section 1983 because it is clearly "inconsistent with . . . the Laws of the United States." *See* § 1988. As discussed above, Section 1983 does not permit vicarious liability claims against municipalities. *Monell*, 436 U.S. at 691, 694. Section 41-4-4(D) runs contrary to federal law by requiring municipalities to pay any judgment entered against municipal employees under Section 1983, so long as the employees acted within the scope of their duties. In light of this inconsistency, § 41-4-4(D) may not be used to supplement Section 1983 remedies. *Moor*, 411 U.S. at 706. *See also, e.g.*, *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1148 (N.D. Cal. 2015) ("[I]nterpreting Section 1988 as importing a state law right to contribution or indemnification into Section 1983 would conflict with the policies underlying Section 1983 and contravene the guidance in *Moor*."); *Mason v. City of New York*, 949 F. Supp. 1068, 1079 (S.D.N.Y. 1996) (holding that a right of contribution would be inconsistent with Section 1983's goals because it would not serve the goals of contribution and it would weaken the statute's deterrent value); *Hepburn ex rel. Hepburn v. Athelas Inst., Inc.*, 324 F. Supp. 2d 752, 759 (D. Md. 2004) (state contribution statute could not supplement Section 1983 remedies because contribution did not further Section 1983's goals of compensation and deterrence); *Koch v. Mirza*, 869 F. Supp. 1031, 1040 (W.D.N.Y. 1994) ("Nowhere in the legislative history of 42 U.S.C. § 1988 and its amendments does Congress imply that state contribution laws for joint tort-feasors should be incorporated into civil rights litigation where, in order to be liable to a plaintiff, a party must have participated in or had personal knowledge of the actions which deprived that plaintiff of his constitutional rights."); *Hurley v. Horizon Project, Inc.*, No. CV-08-1365-ST, 2009 WL 5511205, at *5 (D. Or. Dec. 3, 2009) (state contribution law cannot be incorporated into Section 1983 because it conflicts with federal policy).

Any argument for incorporating § 41-4-4(C) into Section 1983 fails for similar reasons. Under *City of Newport*, there is no question that municipalities may not be held liable for punitive damages, both as a matter of statutory construction and as a matter of federal policy. Section 41-4-4(C) attempts to subvert federal law and policy by requiring municipalities to pay "any award for punitive or exemplary damages" based on an employee's conduct in the scope of his duties. This remedy is inconsistent with Section 1983, as interpreted by the United States Supreme Court in *City of Newport*, and may not be incorporated into federal law. *Moor*, 411 U.S. at 706; *Hoa*, 78 F. Supp. 3d at 1148; *Koch*, 869 F. Supp. at 1040. The New Mexico Legislature may not rewrite federal law to suit its policy preferences.

### 2.  *Federal law does not require APS to pay a judgment against Mr. Aldaz.*

A separate, but related, line of federal cases establishes that (1) state law is not relevant to the availability of indemnification in connection with federal statutory claims, and (2) a right of indemnification does not exist under Section 1983 or federal common law. These cases also support the conclusion that APS may not be required to pay a judgment against Mr. Aldaz.

In the primary case on point, *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77 (1981), an employer had been held liable to female employees for discriminatory pay practices under Title VII. The employer sought contribution and indemnification from the employees' unions, which had established the applicable discriminatory pay rates. *Id.* at 81-82. The Court analyzed whether a right to contribution/indemnification[4] might

---

[4] Although the Court primarily discussed the contribution claim at issue, other courts have noted that the same analysis would apply to indemnification. *See, e.g.*, *Gilmore v. List & Clark Constr. Co.*, 866 F. Supp. 1310, 1312 n.2 (D. Kan. 1994) ("*Northwest Airlines* did not address whether a right of indemnification, as opposed to contribution, may be implied under Title VII. It is well-settled, however, that the Supreme Court's decision is equally applicable to claims for indemnification."); *Hoa*, 78 F. Supp. 3d at 1145 (*Northwest Airlines* applies to indemnity and contribution because the two are "closely related").

exist and, if so, what the source of that right might be. It determined that the right might have been created in one of two ways: (1) as an implicit remedy contained in the federal statutes at issue, or (2) through federal common law. *Id.* at 91. With respect to the first point, the Court conducted a statutory analysis to determine "whether Congress intended to create the private remedy—for example, a right to contribution—that the plaintiff s[ought] to invoke." *Id.* It concluded that Title VII did not contain an implicit right of action for contribution/indemnification because (1) the statute was silent on the subject, (2) the statute was designed to protect employees, not employers seeking contribution, (3) the statute contained a comprehensive remedial structure, which indicated that Congress did not authorize additional remedies, and (4) the legislative histories of Title VII and the Equal Pay Act did not suggest that Congress intended to authorize contribution/indemnification. *Id.* at 91-95. The Court also determined that there was no federal common-law right to contribution, and noted that contribution under federal common-law is typically limited to specific contexts such as admiralty disputes. *Id.* at 95-97. In connection with this analysis, the Court recognized that a right to contribution might exist under state law, but only in cases in which **state law supplied the appropriate rule of decision—***i.e.*, only in cases involving substantive state-law claims. *Id.* at 97 n.38. *See also Gilmore*, 866 F. Supp. at 1312-13 (reading *Northwest Airlines* as establishing that "it is inappropriate to look to state law to provide a right of indemnity and contribution under Title VII where no such right exists in the federal statutory scheme"; "**state law is simply not relevant where the underlying liability of the defendant seeking contribution has its source in federal statutory law**" (emphasis added)).

Subsequent cases have applied *Northwest Airlines* to Section 1983, and have confirmed that federal law—not state law—governs the availability of indemnification/contribution in connection with a judgment under Section 1983. *See, e.g.*, *Valdez v. City of Farmington*, 580 F.

Supp. 19, 20 (D.N.M. 1984) ("[T]he question of whether a right to contribution exists among joint Section 1983 defendants **is one of federal common law, not one governed by reference to the law of the forum state**." (emphasis added)); *Koch*, 869 F. Supp. at 1041 (claim for indemnity under state law would never be appropriate under Sections 1983/1988; "[I]t is clear that common law or statutory indemnity and contribution principles serve different interests than the constitutional values sought to be vindicated in a § 1983 action. . . . **[A]llowing a claim for contribution or indemnification by reference to state common law or statutory laws under 42 U.S.C. § 1988 is irrelevant to and inconsistent with the purpose and policy of the federal civil rights laws, and is, therefore, specifically excluded from consideration under 42 U.S.C. § 1988**." (emphasis added)); *Underwood v. Mississippi Dep't of Corrections*, 2020 WL 12990980, at *2-*3 (S.D. Miss. June 30, 2020) (rejecting defendant's request for defense and indemnification from government employer under state law in Section 1983; collecting cases in which state right to contribution or indemnification did not extend to Section 1983 claims); *Mason*, 949 F. Supp. at 1079 n.10 (*Northwest Airlines* dealt with Title VII, but is "instructive" in the context of Section 1988/1983 because it reflects a "reluctance to recognize a right to contribution in civil rights cases"). In light of this authority, state law such as the New Mexico TCA cannot be used to create an indemnity obligation with respect to a judgment entered under Section 1983.

Moreover, federal district courts have determined that there is no federal right to indemnity applicable to judgments entered under Section 1983. In *Wright v. Reynolds*, 703 F. Supp. 583 (N.D. Tex. 1988), for example, the district court conducted the analysis set forth in *Northwest Airlines* and concluded that neither Sections 1983/1988 nor federal common law creates a right of indemnification. The court determined that the federal statutes do not create an express or implied right to indemnification because (1) the language of Section 1988 does not create a right to

14

contribution or indemnification, (2) the legislative history of Section 1988 does not reference contribution/indemnification, and (3) such a right should not be implied because Section 1988 is not "intended to benefit one found to have violated a civil rights provision such as section 1983."[5] *Id.* at 591. The court also declined to recognize a right to contribution/indemnification under federal common law because Section 1988 only allows courts to fashion a remedy for individuals whose civil rights have been violated, and does not "authorize courts to fashion a body of federal law involving the rights of those who violate the civil rights of others." *Id.* at 591-92 (quoting Section 1988). *See also Hepburn*, 324 F. Supp. 3d at 756 (citing *Northwest Airlines* for general proposition that "contribution rights should not be read into federal statutes to protect the persons regulated by the statute"); *Hoa*, 78 F. Supp. 3d at 1145-46 (no federal right of contribution applicable to Section 1983); *Doe v. Williamsburg Indep. Sch. Dist.*, 2016 WL 1735850 (E.D. Ky. May 2, 2016) ("[T]he prevailing view is that no right to indemnification or contribution exists under Section 1983." (collecting cases)); *Katka v. Mills*, 422 F. Supp. 2d 1304, 1308 (N.D. Ga. 2006) ("[M]ost cases decided since *Northwest Airlines* have held that there is no right to contribution under § 1983.").

Here, as in *Wright*, there is no express or implied federal statutory right to indemnification under Sections 1983/1988 that might require APS to pay a judgment against Mr. Aldaz. The language and legislative history of Sections 1983/1988 do not reference indemnification in any way. 42 U.S.C. §§ 1983, 1988; *Wright*, 703 F. Supp. at 591. Moreover, a right to indemnification cannot be implied under Section 1983 because the statute was not designed to protect individual defendants such as Mr. Aldaz, who are alleged to have violated the claimant's federally protected

---

[5] The court acknowledged that the structure of Sections 1983 and 1988 "d[id] not provide much counsel" because it is not designed to be a "comprehensive scheme of remedies." *Id.* at 591.

rights. *Northwest Airlines*, 451 U.S. at 91-92 (no implied right of contribution for employer because Title VII was designed to protect employees, not employers); *Wright*, 703 F. Supp. at 591 ("It cannot be argued that section 1988 is intended to benefit one found to have violated a civil rights provision such as section 1983."); *Hepburn*, 324 F. Supp. 3d at 756 ("contribution rights should not be read into federal statutes to protect the persons regulated by the statute").

Nor is there any support for a federal common-law right to indemnification in this case. Although Section 1988 gives courts some authority to fashion remedies *for the protection of Section 1983 claimants*, it does not authorize the creation of a federal common-law right to indemnification for the benefit of Mr. Aldaz. *Wright*, 703 F. Supp. at 591-92 (plain language of Section 1988 protects "all persons in the United States in their civil rights, and for their vindication of those rights," and "does not authorize courts to fashion a body of federal law involving the rights of those who violate the civil rights of others"). Moreover, *Northwest Airlines* contains a "strong indication[] from the Supreme Court that only under the most narrow and specific circumstances could a federal common law right to contribution be found." *Katka*, 422 F. Supp. 2d at 1309. "[F]ederal lawmaking power is vested in the legislative, not the judicial, branch of government; therefore, federal common law is subject to the paramount authority of Congress." *Northwest Airlines*, 451 U.S. at 95 (quotes omitted). In this case, a federal common-law right to indemnification for the benefit of Mr. Aldaz would undermine the language and policy of Section 1983 by imposing strict liability on APS for the allegedly criminal conduct of its employee. *See Monell*, 436 U.S. at 692-93 (language of Section 1983 prohibits vicarious liability); *City of Newport*, 453 U.S. 247 (1981) (Congress did not intend punitive damages against municipalities). This is not the type of "narrow and specific circumstance" in which federal common-law might support indemnification. *Katka*, 422 F. Supp. 2d at 1309; *Northwest Airlines*, 451 U.S at 95-96.

### D.  To the Extent State Law Is Relevant, It is Pre-empted by Federal Law

For all of the reasons discussed above, New Mexico law does not govern the question of whether Plaintiff may obligate APS to pay a judgment against Mr. Aldaz. Even if state law were relevant, however, it could not be applied to this matter because it is pre-empted by federal law.

The Supremacy Clause of the U.S. Constitution states that the laws of the United States "shall be the Supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. In light of this Clause, the United States Supreme Court has "long recognized that state laws that conflict with federal law are without effect," and are pre-empted by federal law. *Altria Group, Inc. v. Good*, 555 U.S. 70, 75 (2008) (quotes omitted). "Such preemption can occur . . . to the extent that a state law conflicts with a federal law ('conflict preemption')." *Colo. Dept. of Pub. Health & Environ. v. United States*, 693 F.3d 1214, 1222 (10th Cir. 2012). "Conflict preemption occurs where it is impossible for a party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1223. Thus, "the purpose of Congress is the ultimate touchtone of pre-emption analysis," and such purpose may be implied based on the structure and goals of the relevant statute. *Id.* at 1223 & n.9.

In this case, the TCA purports to require APS to pay any judgment for compensatory and punitive damages awarded against Mr. Aldaz. But any such requirement interferes with the objectives of Section 1983 on multiple grounds. First, in *Monell*, the United States Supreme Court held that the language and history of Section 1983 "compel[led] the conclusion" that a municipality cannot be held vicariously liable for the acts of its agents. 436 U.S. at 691. Any requirement that APS indemnify Mr. Aldaz for an award of compensatory or punitive damages would undermine this authority by, in effect, imposing vicarious liability on a municipality for the

intentional torts of its employee. *Cf. Valdez*, 580 F. Supp. at 21 (noting, without deciding, that principles of indemnification/contribution appear inconsistent with the requirement of direct, personal liability under Section 1983); *Gilmore*, 866 F. Supp. at 1313 (contribution and indemnification were inconsistent with Title VII where party seeking indemnification wished to shift liability to an individual who could not be sued in his individual capacity).

Second, requiring APS to pay a punitive damages award would interfere with Section 1983's goal of deterrence. In *City of Newport*, the Supreme Court made clear that deterrence is best achieved by allowing punitive damages awards against individual wrongdoers. *City of Newport*, 453 U.S. at 266-67. Any state statute reallocating Mr. Aldaz's personal liability for punitive damages to APS and New Mexico taxpayers would undermine Section 1983 and *City of Newport* by shifting punishment to blameless parties.[6] *See id.*; *Hurley*, No. CV-08-1365-ST, 2009 WL 5511205, at *5 ("Allowing a party who has violated another person's civil rights to pass some liability on to another would diminish the deterrent effect of § 1983."). Moreover, because punitive damages are non-compensatory by definition, *City of Newport*, 453 U.S. at 266-67, requiring APS to pay a punitive damages award against Mr. Aldaz would not further Section 1983's compensatory goals. *See id.* at 267 ("[P]unitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill.").

---

[6] The argument against indemnification is particularly strong where, as here, APS has been dismissed from the lawsuit. Moreover, the undisputed evidence establishes that APS had no reason to know of Mr. Aldaz's alleged abuse of J.O., did not negligently operate or maintain Helen Cordero Elementary, and certainly did not act with deliberate indifference to the alleged abuse. In fact, even J.O. admits that no one could have known of the abuse until years later because she intentionally concealed it. *See* Section I, *supra*. APS has filed a summary judgment motion on Plaintiff's TCA claim, *see* [Doc. 211], and will present strong summary judgment motions on Plaintiff's claims under Title IX and Section 1983 in the event that Plaintiff amends her Complaint.

The New Mexico Legislature apparently does not agree with the federal law and policy governing vicarious liability and damages under Section 1983. However, it may not undermine such authority by prescribing statutory remedies that are barred by federal law. "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 378 (1990) (state cannot refuse to waive municipal immunity for Section 1983 claims); *id.* at 371 ("The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source."). The TCA may not be used to circumvent the "legislative decisions that Congress has made on behalf of all the People." *See id.* at 383. *Cf. Hoa*, 78 F. Supp. 3d at 1153-54 (state law on contribution and indemnification "is subject to implied preemption under the doctrine of obstacle preemption"); *Hepburn*, 324 F. Supp. 2d at 759 (concluding that state right of contribution conflicted with Section 1983 because the statute's "twin goals of compensation and deterrence are not furthered by reducing the defendants' costs of violations"). Accordingly, to the extent §§ 41-4-4(C)-(D) are relevant to the question of indemnification under Section 1983, they are pre-empted by federal law.

### E. Section 41-4-4(C) is Unenforceable Because It Conflicts with the Anti-Donation Clause of the New Mexico Constitution.

Even if the Court disagrees with the arguments above, it should grant judgment on the pleadings as to Plaintiff's attempt to hold APS vicariously liable for a punitive damages award against Mr. Aldaz. As explained herein, § 41-4-4(C) cannot be enforced against APS because, as applied to this case, it violates the Anti-Donation Clause of the New Mexico Constitution.

#### 1.   *The Anti-Donation Clause*

The Anti-Donation Clause, Article IX, Section 14, states: "Neither the state nor any county,

school district or municipality, except as otherwise provided in this constitution, shall directly or indirectly lend or pledge its credit or make any donation to or in aid of any person, . . . except as provided in Subsections A through H of this section."[7] The New Mexico Supreme Court "has defined donation, for purposes of Article IX, Section 14, as 'a gift, an allocation or appropriation of something of value, without consideration.'" *Moses v. Ruszkowski*, 2019-NMSC-003, ¶ 50, 458 P.3d 406 (quoting *Village of Deming v. Hosdreg Co.*, 1956-NMSC-111, ¶ 36, 62 N.M. 18). "The constitution makes no distinction as between 'donations,' whether they be for a good cause or a questionable one. It prohibits them all." *State ex rel. Mechem v. Hannah*, 1957-NMSC-065, ¶ 38, 63 N.M. 110 (internal quotes omitted).

In determining whether a governmental entity has violated the Anti-Donation Clause, New Mexico courts and the New Mexico Attorney General's Office[8] have focused on whether the government received consideration for its payment to a private entity or individual. *City of Raton v. Arkansas River Power Auth.*, 600 F. Supp. 2d 1130, 1160 (D.N.M. 2008). *See also, e.g.*, *State ex rel. Office of State Engineer v. Lewis*, 2007-NMCA-008, ¶ 49, 141 N.M. 1 ("Consideration for the allocation can be a defining element" in determining whether aid to a private enterprise has the "character of a donation in substance and effect" (internal quotes omitted)); N.M. Att'y Gen. Ltr. Op. (12/1/2022) ("[Go]vernment may not confer something of value to a private entity or individual without receiving something of value in return. Consideration, or value in return, is perhaps the definitive factor in determining whether a violation of the Anti-donation Clause has occurred."). Consistent with these principles, the New Mexico Supreme Court has found violations

---

[7] Subsections A-H, which create exceptions for situations such as caring for the sick and indigent, do not apply here.

[8] Attorney General opinions are not binding authority, but may be persuasive to the extent they do not conflict with existing case law. *Bd. of Cnty. Comm'rs v. Ogden*, 1994-NMCA-010, ¶ 15, 117 N.M. 181.

of the Anti-Donation Clause "in circumstances involving an outright gift of public money to a private individual or entity." *Moses v. Ruszkowski*, 2019-NMSC-003, ¶ 50.

Thus, the question relevant to this case is whether § 41-4-4(C) obligates APS to make a gift—for which it receives no consideration—by paying a punitive damages award for the personal benefit of an employee who allegedly engaged in criminal and unconstitutional behavior. The answer to this question turns on the broad interpretation of "scope of duties" imposed upon § 41-4-4(C) by New Mexico courts.

> *2.* McBrayer *defines "scope of duties" to include criminal conduct performed for the sole personal benefit of a governmental employee*

As discussed above, § 41-4-4(C) of the TCA requires that "[a] governmental entity shall pay any award for punitive or exemplary damages awarded against a public employee" under federal law, such as Section 1983, "if the public employee was acting within the scope of his duty." The TCA defines "scope of duty" as "performing any duties that a public employee is **requested, required or authorized to perform** by the governmental entity, regardless of the time and place of performance." NMSA 1978, § 41-4-3(G) (emphasis added). Thus, based on the plain language of the statute, a governmental employer such as APS should only be obligated to indemnify an employee for a judgment based on the performance of duties that were "requested, required or authorized" by APS. *Id.* In this case, there is no question that APS did not request, require, or authorize Mr. Aldaz to sexually abuse Plaintiff. *See* APS's Motion for Summary Judgment on Plaintiff's TCA Claims [Doc. 211]; *cf.* APS's Motion for Judgment on the Pleadings on Plaintiff's Section 1983 Claim [Doc. 160]; APS's Motion for Judgment on the Pleadings on Plaintiff's Title IX Claim [Doc. 158]. *See also* Section I, *supra* (discussing Plaintiff's admission that APS could not have known of abuse in 2013-14). Accordingly, if the plain statutory language governed this inquiry, there would be no argument for obligating APS to pay a judgment for punitive damages

21

against Mr. Aldaz.

The complication is that in *Risk Management Division v. McBrayer*, 2000-NMCA-104, 129 N.M. 778, the New Mexico Court of Appeals rejected the plain meaning of "scope of duties," as defined in § 41-4-3, and instead adopted a broad interpretation that expands "scope of duties" to include criminal conduct by public employees. In *McBrayer*, a public university instructor lured a student to his apartment, where he raped and tortured her. *Id.* ¶¶ 3-4. After being criminally convicted and sentenced to prison, the instructor faced a civil lawsuit. *Id.* ¶¶ 4-5. The state argued that it was not obligated to defend or indemnify the instructor under the TCA because the criminal acts at issue were not "requested, required, or authorized" by the state and, thus, were not within the instructor's "scope of duties." *Id.* ¶ 10. The court rejected this argument, and held that "scope of duties" should include a public employee's violent crimes, so long as the crimes were committed while performing a duty that the employee was requested, required, or authorized to perform. *Id.* ¶¶ 17-20 (holding that jury could find that rape and attempted murder were committed in the scope of duty because instructor used his "authorized duty as a subterfuge to accomplish his assault" by luring student to his apartment to pick up class materials).[9] The "net effect" of this decision is that "an employee may commit a criminal act for his own benefit, resulting not only in an award of compensatory damages to his victim, but an award of punitive damages, and the taxpayers of New Mexico will have to pay that award [under §§ 41-4-4(C)-(D)] if the circumstances that allowed the criminal act found their origin in the employee's work for a governmental entity."[10] Matthew Holt,

---

[9] In reaching this conclusion, the court relied on the fact that § 41-4-4(E) permits a governmental entity to seek indemnification from an employee if the government has been required to pay a judgment against the employee based on fraudulent or malicious conduct. 2000-NMCA-104, ¶¶ 11-14 (noting that there would be no point to § 41-4-4(E) if the government is not required to pay judgments against employees based on malicious and/or criminal conduct).

[10] Notably, *McBrayer* relies in part on the policy goal of compensating injured plaintiffs, *see* 2000-NMCA-104, ¶¶ 21, 23, but that rationale for indemnification does not apply in the context of

Indemnifying Public Employees Against Judgments for Punitive Damages: The New Mexico Tort

Claims Act is Unconstitutional, 47 N.M. L. Rev. 318, 327 (2017).

> **3.** _Section 41-4-4(C), as interpreted by_ McBrayer, _violates the Anti-Donation Clause_.

No New Mexico case directly addresses the issue here: whether the use of public funds to

pay punitive damages that may be awarded as a result of Mr. Aldaz's personal, criminal conduct

violates the Anti-Donation Clause. However, the New Mexico Attorney General's Office has

considered the analogous question of whether the Anti-Donation Clause prohibits the government

from paying public employees' criminal defense costs. This authority indicates that it would be

unconstitutional to require APS to pay a punitive damages award where, as here, the payment

privately benefits Mr. Aldaz without a corresponding public benefit.

In _Clarence v. Lithgow_, NMAG Op. No. 85-23, 1985 WL 190691, the Attorney General

analyzed whether public funds can be used to pay for a public employee's criminal defense. After

surveying the law of other jurisdictions, the Attorney General recognized that resolution of the

issue "must also address whether the anti-donation clause . . . poses a constitutional barrier to the

expenditure of public funds for attorney fees incurred in defending against a criminal prosecution."

_Id._ at *2. The Attorney General concluded that criminal defense costs can be paid with public

funds only when the following criteria are satisfied: (1) the charges must arise from the discharge

of an official duty in which the government has an interest, (2) **the employee must have been**

**acting in good faith when the alleged criminal conduct occurred**, (3) the agency seeking to

indemnify the employee must have either express or implied power to do so, (4**) the employee**

---

punitive damages. Thus, the reasoning behind _McBrayer_'s broad interpretation of "scope of duty" does not make sense with respect to § 41-4-4(C). This is especially true considering that the application of _McBrayer_ to punitive damages undermines the TCA's stated policy goal of limiting government liability.

**must be exonerated of the criminal charges**, and (5) the decision to pay the fees must be made by an impartial official[.]" *Id.* at *3 (emphasis added).[11]

In NMAG Op. No. 07-03, 2007 WL 2143020, the Attorney General reiterated its criteria for paying legal expenses and explained that "[t]he requirements that the allegations arise from conduct within the public employee's official capacity or scope of employment **and that the employee be exonerated ensure that public funds are not improperly used to provide a defense in personal proceedings**." *Id.* at *2 (emphasis added). In connection with this analysis, the Attorney General noted that "the use of public money to pay an employee's personal legal expenses is specifically prohibited by the anti-donation clause." *Id. See also id.* (quoting N.Y. Att'y Gen. Informal Op. No. 2003-16, 2003-WL 22669327, for proposition that "municipality's payment of legal fees when an employee is found guilty would constitute an unconstitutional gift of public funds because an employee acting criminally is not acting within the scope of his public employment"). Similarly, in NMAG Op. No. 10-05, 2010 WL 5113294, the Attorney General reaffirmed the five criteria for paying an employee's criminal defense costs, and emphasized that the employee must "successfully defend[] against the charges." *Id.* at *6 (exoneration is "most critical" factor because it "ensures that public funds are not improperly used to defend a public employee or officer who is convicted of a crime"). *See also id.* at *4 (noting that the state cannot pay for a defense in a proceeding implicating an employee's "personal, individual interests"

---

[11] The Attorney General noted that providing a criminal defense may benefit the government in some situations, because a conviction may have a conclusive effect in subsequent civil proceedings against the government. 1985 WL 190691, at *3. This benefit is not applicable to the payment of Mr. Aldaz's punitive damages in this civil matter, however, given that APS has been dismissed from the case, has consistently denied its own liability under the federal claims, and can establish with undisputed evidence that it did not negligently maintain and operate Helen Cordero, nor did it act with deliberate indifference to Mr. Aldaz's alleged conduct. *See* FN 6, *supra*; APS's Motion for Summary Judgment on Plaintiff's TCA Claims [Doc. 211].

without violating the anti-donation clause).

These opinions indicate that § 41-4-4(C) violates the Anti-Donation Clause as applied here, because it would require APS to pay punitive damages that may be awarded based on an employee's alleged reprehensible conduct undertaken for personal reasons. Punitive damages are permitted only when a defendant's actions were malicious, willful, reckless, wanton, fraudulent, or in bad faith." UJI 13-1827 NMRA. *See also Smith v. Wade*, 461 U.S. 30, 56 (1983) (punitive damages permitted under Section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"). Under both state and federal law, these damages are designed to punish a wrongdoer and deter future wrongful conduct. *Madrid v. Marquez*, 2001-NMCA-087, ¶ 4, 131 N.M. 132; *City of Newport*, 453 U.S. at 266-67. Thus, if punitive damages are awarded against Mr. Aldaz, it will reflect a jury's finding that he should be punished for reprehensible conduct performed with "evil motive or intent." *Smith*, 461 U.S. at 56. Such an award would reflect a jury determination that Mr. Aldaz has engaged in intentional abusive conduct, *i.e.* that he has not been "exonerated" of the alleged abuse.

APS would receive no public benefit from paying a punitive damages award against Mr. Aldaz. *See* NMAG Op. No. 85-23, 1985 WL 190691, at *2-*3; NMAG Op. No. 07-03, 2007 WL 2143020, at *2; NMAG Op. No. 10-05, 2010 WL 5113294, at *4, *6. To the contrary, shifting Mr. Aldaz's personal liability to APS would undermine the policy goals of punitive damages. Any punitive damages award in this case would be based on Mr. Aldaz's alleged sexual abuse of J.O. This abuse, if proven, was personal to Mr. Aldaz—it was not requested, authorized, or approved by APS, and it did not benefit APS in any way. *Cf.* 2/11/26 Memorandum Opinion (dismissing claims against APS). Thus, under *City of Newport*, any punitive damages should be levied against

Mr. Aldaz himself to achieve the policy goals of punishment and deterrence. 453 U.S. at 267-70.

APS, in contrast, cannot be held directly liable for punitive damages and has no obligation under federal law to pay a punitive damages award against Mr. Aldaz. *See* Section III.B, *supra*. If Mr. Aldaz's liability were shifted to APS under § 41-4-4(C), it would have the effect of punishing innocent taxpayers while permitting a public employee to commit reprehensible acts with impunity. *See, e.g.*, *Wright v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996) ("[H]olding public officials personally liable for the expenses incurred in unsuccessfully defending charges of their criminal misconduct in office tends to protect the public and to secure honest and faithful service by such servants. Indeed, allowing expenditure of public funds for such use would encourage a disregard of duty and place a premium upon neglect or refusal of public officials to perform the duties imposed upon them by law.").[12] This shifting of liability under § 41-4-4(C) involves no public benefit and, instead, requires APS to donate funds for Mr. Aldaz's personal benefit, in violation of the Anti-Donation Clause. *See* Holt, Indemnifying Public Employees, 47 N.M. L. Rev. at 332 ("When the government pays punitive damages, the government employee who committed a tortious act benefits by being discharged from his or her obligations to pay damages The plaintiff who was awarded damages also benefits, because he or she receives compensation greater than the amount necessary for any injuries. However, the government does not receive a corresponding benefit, which is required under the anti-donation clause."). Accordingly, § 41-4-4(C) (as interpreted by *McBrayer*) is unconstitutional as applied here and cannot be enforced against APS.

Notably, this outcome appears to be consistent with the intent of the New Mexico

---

[12] J.O. may argue that Section 41-4-4(C) benefits the public because Mr. Aldaz may not be able to pay a punitive damages award. But punitive damages are non-compensatory by definition. If collected, they represent a windfall to a fully-compensated plaintiff. It does not benefit the public to allocate taxpayer funds to a windfall payment that will not punish or deter the responsible party.

Legislature. As discussed above, the TCA was enacted in order to (1) permit compensation of plaintiffs who are injured by government conduct, while (2) placing limits on government liability. NMSA 1978, § 41-4-2(A); Holt, Indemnifying Public Employees, 47 N.M. L. Rev. at 319. *See also* NMSA 1978, § 41-4-19 (capping compensatory damages and prohibiting punitive damages on TCA claims). Neither of these goals is served by requiring government employers to pay uncapped, non-compensatory punitive damages awards based on employees' criminal conduct. Moreover, when the Legislature enacted the 2021 New Mexico Civil Rights Act, which waived immunity for claims under the New Mexico Constitution, it provided that government employers may only be liable for capped compensatory damages based on the unconstitutional conduct of public employees. *See* NMSA 1978, § 41-4A-3. This reaffirms that the Legislature does not intend to expose government employers to vicarious liability for punitive damages, even when a public employee has engaged in unconstitutional conduct. Any interpretation of § 41-4-4(C) that circumvents this legislative intent and requires APS to pay a punitive damages award based on Mr. Aldaz's personal conduct violates the New Mexico Constitution, and should be rejected.

## IV.    CONCLUSION

Under federal law, APS is not required to pay a Section 1983 judgment that may be entered against Mr. Aldaz. New Mexico law is not relevant to APS's indemnity obligations under Section 1983, and even if it were, it would be preempted by federal law. In addition, Section 41-4-4(C) cannot be enforced against APS in this matter because it would require APS to donate public funds for a private purpose, in violation of the Anti-Donation Clause of the New Mexico Constitution. Accordingly, APS respectfully requests that the Court enter an Order clarifying that APS has no obligation to pay any judgment that may be entered against Mr. Aldaz under Section 1983.

Respectfully Submitted,

MODRALL SPERLING ROEHL HARRIS
   & SISK, P.A.

By: */s/ Tomas J. Garcia*
   Jennifer G. Anderson
   Tomas J. Garcia
   Celina C. Baca
   500 Fourth Street NW, Suite 1000
   Albuquerque, NM 87102
   Tel: (505) 848-1800
   jennifer.anderson@modrall.com
   tomas.garcia@modrall.com
   celina.baca@modrall.com
   *Attorneys for Defendant Board of Education of*
   *Albuquerque Public Schools*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of February, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the notice of electronic filing.

MODRALL, SPERLING, ROEHL, HARRIS
   & SISK, P.A.

By: */s/ Tomas J. Garcia*
   Tomas J. Garcia

W5567493.DOCX