IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

J.O.,

Plaintiff,

v. No. 1:23-cv-01021-KG-JMR

BOARD OF EDUCATION OF ALBUQUERQUE PUBLIC SCHOOLS and DANNY ALDAZ,

Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Albuquerque Public Schools' ("APS") Motion for Judgment on the Pleadings Regarding Indemnification and Punitive Damages, Doc. 235, Plaintiff's Response, Doc. 349, and APS's Reply, Doc. 351. For the reasons below, the Court denies the motion.

## *I. Background*

The Court articulated the background of this case in its prior Order, Doc. 231, and incorporates relevant portions of that Order here.

Plaintiff alleges that her second-grade teacher, Defendant Danny Aldaz, sexually assaulted her during the 2013–14 school year at Helen Cordero Elementary. Doc. 241 at 5–8. During that school year, Aldaz "repeatedly groomed and sexually abused" Plaintiff, including "in a storage closet in his classroom." *Id.* at 6. Aldaz "showed favoritism" toward Plaintiff by giving her "passing grades" despite not requiring her to complete classroom assignments. *Id.* at 7. Plaintiff has continued to experience "feelings of distrust and sadness" because of the "abuse in her classroom by her teacher at such a young age." *Id.* at 16.

Plaintiff sued Aldaz and APS in New Mexico state court in October 2023. Doc. 1-2 at 1.

The case was removed to this Court a month later. Doc. 1 at 1.

Plaintiff makes three claims against APS. First, Plaintiff alleges that APS violated her substantive due process right "to bodily integrity" under 42 U.S.C. § 1983. Doc. 241 at 17. Specifically, she alleges that Aldaz "acted in accordance with APS policy, custom, practice, and usage" when he sexually abused her. *Id.* at 18. Those policies, Plaintiff contends, "combined to allow, enable, and support" the abuse by Aldaz. *Id.*

Second, Plaintiff alleges that APS violated her rights under Title IX, 20 U.S.C. §§ 1681–89. *Id.* at 20. Plaintiff claims that APS "had actual or constructive knowledge" of the abuse by Aldaz against her. *Id.* As a result, Plaintiff contends that APS "deprived [her] of benefits under Title IX, and subjected her to discrimination on the basis of her sex." *Id.* at 21.

Third, Plaintiff alleges that APS violated the New Mexico Tort Claims Act ("NMTCA") by neglecting its "duty...to exercise reasonable care in the maintenance and operation" of Helen Cordero Elementary School. *Id.* at 22. Plaintiff alleges that maintaining and operating the premises includes a duty "to protect minor students...from sexual assaults, batteries, abuse, or harassment from other persons" by "supervis[ing] teachers...adopt[ing] and implement[ing] proper safety policies...investigat[ing] and act[ing] upon any suspicions or reports" of improper sexual conduct. *Id.* at 23. Because APS "breached its duties of care," Plaintiff contends, APS is "jointly and severally liable for all injuries and damages caused...pursuant to the doctrines of vicarious liability and respondeat superior." *Id.*

In its prior Order, the Court granted APS's motions for judgment on the pleadings as to Plaintiff's § 1983, Title IX, and NMTCA claims. *See* Doc. 231 at 11. The Court, however, permitted Plaintiff to amend her complaint, *id.*, and she did so. *See* Doc. 241.

Prior to Plaintiff amending her complaint, APS filed the present motion. *See* Doc. 235.

APS seeks judgment on the pleadings that it has no obligation under the NMTCA to pay any compensatory or punitive damages awarded against Aldaz under § 1983. Doc. 235 at 2–3. APS contends that federal law, rather than state law, governs indemnification for a § 1983 judgment and does not impose an indemnification obligation on APS, that § 41-4-4(C), (D) of the NMTCA is preempted by federal law, and that requiring APS to pay punitive damages awarded against Aldaz would violate the Anti-Donation Clause of the New Mexico Constitution. *See generally id.* at 12–27.

## ***II. Legal Standard***

Motions for judgment on the pleadings are considered under the same standard as Rule 12(b)(6). *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). The Court accepts the nonmoving party's well-pleaded factual allegations as true and draws all reasonable inferences in that party's favor. *Id.* Judgment on the pleadings is appropriate when "no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* A complaint must nevertheless contain enough factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although detailed factual allegations are unnecessary, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

## ***III. Analysis***

For the reasons below, the Court concludes that (A) the NMTCA's indemnification obligations are distinct from liability under § 1983; (B) NMTCA § 41-4-4(C), (D) are not preempted by federal law; and (C) APS has not established that § 41-4-4(C) violates New Mexico's Anti-Donation Clause.

**A. The NMTCA's indemnification obligations are distinct from § 1983 liability.**

APS first argues that federal law, rather than state law, governs whether it must indemnify Aldaz for a judgment against him under § 1983. Doc. 235 at 4–6, 12–16. In APS's view, requiring it to satisfy a § 1983 judgment entered against Aldaz would, in effect, impose vicarious or strict liability on APS for Aldaz's conduct. *See id.* at 9–10, 16–17. APS therefore asks the Court to conclude that § 41-4-4(C), (D) cannot obligate it "to pay any judgment that may be entered against Mr. Aldaz under § 1983." *Id.* at 6. The Court declines to do so.

APS's arguments confuse two legally distinct concepts: liability and indemnification. The NMTCA distinguishes between a governmental entity's liability and its obligation to pay a judgment entered against a public employee. There are two subsections of the NMTCA which mandate the payment of damages, including punitive and exemplary damages, by the government for a third party. Section 41-4-4(C) provides that a governmental entity "shall pay any award for punitive or exemplary damages awarded against a public employee" under, among other things, federal law, if the employee was acting within the scope of his duty. NMSA 1978, § 41-4-4(C) (2001); *see Peña v. Greffet*, 110 F. Supp. 3d 1103, 1137 (D.N.M. 2015) ("The reality is that, if an inmate can recover a judgment against a state-employee prison guard—whether under state law or § 1983—the State has to pay it."). Section 41-4-4(D) provides that a governmental entity "shall pay any settlement or any final judgment entered against a public employee" for a violation of rights secured by the Constitution and laws of the United States that occurred while the employee was acting within the scope of their duty. § 41-4-4(D)(2).

After mandating the payment of damages by governmental entities for their employees, the NMTCA goes on to distinguish that payment obligation from the imposition of liability. *See* § 41-4-4(F). Section 41-4-4(F) states that neither of the two statutory obligations to pay "shall

be construed as a waiver of the immunity from liability" granted to the governmental entity.

The New Mexico Court of Appeals has recognized the same distinction. It has held that the NMTCA "compels a state employer to pay a judgment or a settlement entered against a public employee if the employee acted within the scope of his duties" and that, together with the duty to defend, those provisions operate "as a kind of statutory insurance policy." *Risk Mgmt. Div., Dep't of Fin. & Admin., State v. McBrayer*, 2000-NMCA-104, ¶ 6, 129 N.M. 778. The court notes that "federal law creates the cause of action" but "[n]o federal law requires the state to stand behind the employee financially." *Id.* ¶ 21. New Mexico's lawmakers chose to "assume the burden of compensating victims for civil rights damages caused by public employees." *Id.* ¶ 23.

Plaintiff's argument is consistent with this statutory framework and the New Mexico Court of Appeals' reasoning in *McBrayer*. She does not seek to impose vicarious liability on APS under § 1983. Instead, she contends that the NMTCA creates a separate state-law obligation requiring APS to satisfy a judgment entered against Aldaz if the statutory prerequisites are met. Doc. 349 at 7–12. The Court agrees with Plaintiff. Whether APS is liable under § 1983 and whether New Mexico law requires APS to pay a judgment entered against Aldaz are separate questions.

APS's reliance on *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981), does not compel a different result. There, an employer who had been held liable under federal law sought contribution from unions that allegedly shared responsibility for the discriminatory practices at issue. *Id.* at 79–82. The Supreme Court held that there was no *federal* statutory or *federal* common-law right to contribution. *Id.* at 90–99. Here, however, Plaintiff's principal theory does not depend on federal law as the source of APS's payment

obligation. She argues that the NMTCA directs governmental entities to pay certain judgments entered against their employees.

Nor does *Moor v. Cnty. of Alameda*, 411 U.S. 693 (1973), require a different conclusion. APS relies on *Moor* for the proposition that 42 U.S.C. § 1988 cannot be used to import state-law vicarious liability into § 1983. *See* Doc. 235 at 10–12. While it is true that the Supreme Court held § 1988 does not authorize the "wholesale importation into federal law of state causes of action," *Moor*, 411 U.S. at 703–04, Plaintiff's separate state-law theory does not request that the Court import the NMTCA into § 1983. The NMTCA operates by force of New Mexico law and fully addresses payment of a judgment entered against a public employee.[1]

Here, § 1983 determines whether Aldaz is liable for his alleged unconstitutional acts against Plaintiff. The NMTCA, if its statutory prerequisites are satisfied, separately determines whether APS must satisfy a resulting judgment. APS therefore has not established that the NMTCA's payment obligation is equivalent to imposing vicarious liability on APS under § 1983. The two bodies of law address different questions: § 1983 determines liability, while the NMTCA determines who ultimately must pay the judgment. Accordingly, APS is not entitled to judgment on the pleadings on this ground.[2]

**B. NMTCA §§ 41-4-4(C), (D) are not preempted by federal law.**

Next, APS argues that even if New Mexico law governs its obligation to satisfy a judgment against Aldaz, the NMTCA "could not be applied to this matter because it is preempted by federal law." Doc. 235 at 17. APS alleges two conflicts. *Id.* at 17–18. First, it

---

[1] Indeed, *Moor* acknowledged the distinction between Congress declining to impose municipal vicarious liability "as a matter of federal law" and a State imposing such liability "as a matter of state law." *Id.* at 710 n.27.

[2] Because the NMTCA's payment obligation exists independently of § 1988, the Court need not decide whether § 1988 also permits incorporation of the NMTCA into federal law.

argues that requiring APS to indemnify Aldaz would effectively impose vicarious liability on APS and contravene *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Doc. 235 at 17. Second, APS argues that requiring it to pay punitive damages awarded against Aldaz "would interfere with Section 1983's goal of deterrence." *Id.* at 18. The Court again disagrees.

Conflict preemption arises when "it is impossible for a [regulated] party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Colo. Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States*, 693 F.3d 1214, 1223 (10th Cir. 2012). Obstacle preemption occurs when the state law at issue constitutes a "material impediment" to federal law or "thwart[s] the federal policy in a material way." *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 (10th Cir. 1998). The party asserting preemption bears the burden of showing with specificity that Congress intended to displace state law. *Id.* at 489 n.4.

APS's first asserted conflict fails largely for the reasons already explained. APS is correct that *Monell* prohibits imposing liability on a municipality under § 1983 solely because it employs the individual who committed the constitutional violation. *Monell*, 436 U.S. at 691. The NMTCA, however, does not conflict with that rule. The NMTCA neither makes APS liable under § 1983 for Aldaz's conduct nor changes what Plaintiff must establish to obtain a judgment against Aldaz. Instead, as discussed above, the statute separately governs the satisfaction of a judgment once liability has *already* been established. *See Peña*, 110 F. Supp. 3d at 1137.

APS's reliance on *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 378 (1990), is misplaced. *See* Doc. 235 at 19. There, Florida law would have exempted from § 1983 liability a governmental defendant that federal law subjected to liability. 496 U.S. at 375–78. The

Supreme Court held that Florida could not use a state-law immunity defense to alter the scope of federal liability under the federal cause of action. *Id.* Here, the NMTCA does not alter the scope of federal liability under § 1983; it addresses who must pay a judgment after that liability is determined. The NMTCA's payment provisions do not materially interfere with *Monell*'s holding.

APS's punitive-damages argument requires somewhat more discussion. *See* Doc. 235 at 18. APS principally relies on *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), where the Supreme Court held that "a municipality is immune from punitive damages" under § 1983. *Id.* at 271. The Court reasoned that punitive damages imposed on a municipality punish taxpayers rather than the wrongdoer and that individual punitive-damages liability provides a more effective means of deterrence. *Id.* at 266–70. APS therefore contends that the NMTCA frustrates that federal policy by requiring taxpayers to satisfy punitive damages assessed against Aldaz. *See* Doc. 235 at 18; *see also* Doc. 351 at 5, 10–14.

*City of Newport*, however, addressed whether punitive damages could be imposed against the *municipality itself* under § 1983. *See City of Newport*, 453 U.S. at 271. The Supreme Court did not address whether a state may separately require a municipality to satisfy punitive damages imposed against an individual employee. Indeed, the Court acknowledged individual state indemnification provisions and noted that some excluded malicious or willful misconduct. *Id.* at 269 n.30. The Seventh Circuit confronted the distinction in *Bell v. City of Milwaukee*, 746 F.2d 1205, 1271–72 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005); *see also* Doc. 349 at 19. There, the city invoked *City of Newport* to avoid indemnifying employees for punitive damages under a Wisconsin statute. *Bell*, 746 F.2d at 1271–72. The Seventh Circuit rejected the city's argument and held the city was still required to

indemnify the employees for those awards. *Id.*

The Ninth Circuit reached a similar conclusion in *Cornwell v. City of Riverside*, 896 F.2d 398 (9th Cir. 1990). There, the court held that *City of Newport* did not establish a federal policy prohibiting a municipality from paying punitive damages assessed against its employee. *Id.* at 399–400. APS correctly notes that the California statute in *Cornwell* permitted, rather than required, such payments and imposed conditions on them. *See* Doc. 351 at 10–11. That distinction, however, does not alter *Cornwell*'s central point: *City of Newport* bars the direct imposition of punitive damages on municipalities; it does not establish a federal prohibition on a municipality's payment of an award entered against its employee.[3]

Finally, the Court agrees with Plaintiff that the NMTCA does not necessarily eliminate the individual deterrence on which APS relies. The statute gives a governmental entity the right to recover amounts paid on a judgment if the statutory conditions are met, including that the employee acted "fraudulently or with actual intentional malice." § 41-4-4(E). That provision gives APS an avenue "to recoup against its employee when the conduct is particularly egregious." *McBrayer*, 2000-NMCA-104, ¶ 12. APS has failed to show that the NMTCA materially impedes the operation or purposes of § 1983. It is therefore not entitled to judgment on the pleadings on its preemption theory.

**C. APS has not established that § 41-4-4(C) violates the Anti-Donation Clause.**

Finally, APS argues that the NMTCA, as applied here, violates the Anti-Donation Clause of the New Mexico Constitution. Doc. 235 at 19–27; *see* § 41-4-4(C). According to APS,

[3] The same goes for APS's reliance on *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 786 n.15 (2000). *See* Doc. 351 at 2. That case did not consider whether federal law preempts a state's separate decision to allocate payment of a judgment imposed against an individual employee.

requiring it to pay punitive damages assessed against Aldaz would confer a private benefit on Aldaz without providing APS any consideration or corresponding public benefit. *Id.* at 21, 23–27. The Court concludes that APS has not carried its burden to prove that the NMTCA's punitive-damages provision violates the Anti-Donation Clause. *See Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 11, 306 P.3d 457 ("[T]he burden of establishing that the statute is invalid rests on the party challenging the constitutionality of the statute.").

The Anti-Donation Clause provides, in relevant part, that neither the State nor any school district or municipality shall "make any donation to or in aid of any person." N.M. Const. art. IX, § 14. A "donation" is "a gift, an allocation or appropriation of something of value, without consideration." *Moses v. Ruszkowski*, 2019-NMSC-003, ¶ 50, 458 P.3d 406. The mere fact that legislation provides an incidental benefit to a private recipient, however, does not establish a prohibited donation. *See id.* ¶ 50. The benefit must, considering its nature and surrounding circumstances, amount to a donation in both "substance and effect." *Id.*

Here, APS has not shown that the NMTCA's payment obligation constitutes an impermissible donation. As discussed above, the NMTCA establishes a "kind of statutory insurance policy" that compels governmental entities to defend public employees and satisfy certain judgments entered against them. *McBrayer*, 2000-NMCA-104, ¶ 6. *McBrayer* explained that New Mexico's lawmakers deliberately chose to assume financial responsibility and to "allocate the risk of loss between the state and its employees, not the state and victims." *Id.* ¶ 23. APS's focus on whether Aldaz's alleged abuse benefitted APS does not establish otherwise. *See* Doc. 235 at 25. It is "the duty, not the tortious or criminal act, that triggers the state's obligations" under the NMTCA. *McBrayer*, 2000-NMCA-104, ¶ 20. Thus, the NMTCA does not direct an impermissible and unrestricted transfer of public funds to an employee merely

because the employee engaged in wrongdoing. *Cf. State ex rel. N.M. Water Quality Control Comm'n v. City of Hobbs*, 1974-NMSC-064, ¶ 13, 86 N.M. 444 (explaining Anti-Donation Clause was "never intended as a shield against responsibility for wrongful acts"). Its payment obligation is tied to the employee's public employment and applies only if the conduct giving rise to liability occurred while the employee was acting within the statutory scope of duty. Again, where the employee acted fraudulently or with actual intentional malice, the statute provides an avenue for recovery. § 41-4-4(E). Viewed as a whole, the statutory scheme reflects New Mexico's allocation of financial responsibility between governmental entities and their employees, rather than an outright gift of public funds.

Accordingly, APS has not established as a matter of law that the NMTCA's punitive-damages provision, as applied here, constitutes a prohibited donation under Article IX, Section 14 of New Mexico's Constitution. It therefore is not entitled to judgment on the pleadings on this basis.

## *IV. Conclusion*

For the reasons above, the Court denies APS's Motion for Judgment on the Pleadings Regarding Indemnification and Punitive Damages, Doc. 235.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.