IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

J.O.,

Plaintiff,

v. No. 1:23-cv-01021-KG-JMR

BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS and DANNY ALDAZ,

Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff J.O.'s Motion in Limine, Doc. 206, and Defendant Albuquerque Public Schools' ("APS") Motion to Exclude or Limit Testimony under Federal Rule of Evidence 702, Doc. 215. Both motions are fully briefed. *See* Docs. 207, 214, 219, 233. For the reasons below, the Court grants in part and denies in part each motion.

## *I. Background*

The Court articulated the background of this case in its prior Order, Doc. 231, and does not repeat it here. Plaintiff requests that the Court limit APS's evidence concerning employee training to the training materials APS produced during discovery. *See generally* Doc. 206. APS, in turn, requests that the Court exclude or limit the testimony of Plaintiff's proposed expert, Dr. Charol Shakeshaft, Ph.D., under Federal Rules of Evidence 702, 401, and 403.

Dr. Shakeshaft is a professor in the Department of Educational Leadership at Virginia Commonwealth University and holds a Ph.D. in educational administration. *See* Doc. 219 at 2. Plaintiff retained her to evaluate APS's policies and practices concerning the prevention, detection, training, supervision, reporting, and investigation of educator sexual misconduct. *See* Doc. 219-1 at 3–5. Her report offers opinions concerning, among other things, the adequacy of

APS's policies, employee training, and response to reports of educator sexual misconduct. *See id.* at 2–3.

## *II. Analysis*

For the reasons below, the Court grants in part and denies in part (A) Plaintiff's motion in limine and (B) APS's *Daubert* motion.

### A. Plaintiff's motion in limine is granted in part and denied in part.

Motions in limine are left to the trial court's discretion. *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1249 (10th Cir. 2013). The movant must "identify the particular evidence at issue and articulate with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground." *United States v. Begay*, 497 F. Supp. 3d 1025, 1082 (D.N.M. 2020). If a movant fails to identify evidence with particularity or argue with specificity, the Court may deny the motion. *Id.*

Plaintiff asks the Court to limit APS's evidence concerning employee training to a training video and outline that APS produced during discovery. *See* Doc. 206 at 8–11. She contends that any testimony or argument concerning additional training would be an "ambush" under Federal Rule of Civil Procedure 37(c)(1), particularly because APS's witnesses could not recall the specific content of the training and its Rule 30(b)(6) representative could not identify any additional training materials. *Id.* at 8–10; Doc. 214 at 2–5. APS responds that its witnesses testified to the "existence and general content of APS's training" and that it timely supplemented its production when it located the training video. Doc. 207 at 2–6.

The Court agrees with Plaintiff in part. APS may not introduce undisclosed training evidence without first satisfying Rule 37(c)(1), but the Court declines to limit APS's trial evidence to the video and outline.

To start, Plaintiff's proposal assumes that the materials APS produced constitute the full universe of information disclosed during discovery. The Federal Rules, however, do not draw that equivalence. Rule 26(e)(1)(A) requires supplementation when a party learns that a disclosure or discovery response is materially incomplete or incorrect and the additional information "has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Here, the record reflects that APS witnesses testified about APS's training: Tom Heady testified that APS provided "extensive" training concerning questionable behavior; Roberta Montoya testified that she received training regarding "what to identify" and "how to report" sexual assault and abuse; and Vicki Price testified that the relevant training materials "included specific behavioral indicators of sexual abuse." Doc. 207 at 2–3.

Plaintiff emphasizes that those witnesses could not recall the training with greater specificity. *See* Doc. 214 at 3–5. That limitation may bear on the weight of the proposed testimony, and potentially provide grounds for cross-examination, but it does not transform testimony disclosed during discovery into undisclosed evidence. Accordingly, the Court will not categorically preclude APS witnesses from testifying consistently with testimony they gave during discovery. If a witness's trial testimony materially exceeds or departs from what was previously disclosed, Plaintiff may raise that objection at trial.

Plaintiff's reliance on APS's Rule 30(b)(6) testimony does not require a different result. It is true that a corporate designee's statement that the organization lacks knowledge is attributable to the organization. *See Booker v. P.A.M. Transp., Inc.*, 2024 WL 4444296, at *3 (D.N.M.). Rule 30(b)(6) testimony, however, is not a conclusive judicial admission, and binds an organization "no more and no less" than other deposition testimony. *Radian Asset Assur.,*

*Inc. v. Coll. of Christian Bros. of New Mexico*, 2010 WL 5173316, at *3–4 (D.N.M.). Inconsistencies in that testimony may be addressed through impeachment before the factfinder. *Id.* APS remains bound by what its corporate representatives said at deposition, and Plaintiff may use that testimony as appropriate. Even so, APS may still offer other testimony concerning training that was disclosed during discovery.

APS may not, however, introduce training evidence that was never disclosed. Rule 37(c)(1) generally prohibits evidence that was not disclosed unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). APS has not identified any undisclosed training material or new substantive training testimony that it intends to introduce at trial. The Court therefore need not determine at this time whether any particular nondisclosure was substantially justified or harmless under *Woodworker's Supply*.

Accordingly, Plaintiff's motion is granted in part and denied in part. The motion is granted insofar as APS may not introduce or refer to previously undisclosed training materials or substantive testimony without first establishing admissibility. The motion is otherwise denied.

**B. APS's *Daubert* motion is granted in part and denied in part.**

Next, APS's motion to exclude or limit Dr. Shakeshaft's testimony is granted in part and denied in part. Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under that rule, the proponent must demonstrate that it is more likely than not that the expert's specialized knowledge will help the trier of fact, the testimony is based on sufficient facts or data, the testimony is the product of reliable principles and methods, and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

In performing its gatekeeping role, the Court must ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). That obligation extends to all expert testimony, including testimony based on experience or other specialized knowledge. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Because the reliability inquiry is flexible, the considerations identified in *Daubert* do not necessarily apply in every case. *Id.* at 150–52. The proponent bears the burden of establishing admissibility. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

APS's initial challenge to Dr. Shakeshaft's qualifications is narrow. *See* Doc. 215 at 7. APS "understands, but does not concede," that Dr. Shakeshaft has the requisite experience and background to testify generally concerning educator sexual abuse, but argues that she is unqualified to opine that "APS violated New Mexico or federal law." *Id.* The Court generally agrees that Dr. Shakeshaft is qualified to testify within her field of expertise, "educational policy." *Id.*

Dr. Shakeshaft holds a Ph.D. in educational administration and has studied the sexual abuse of students in schools since the 1980s. *See* Doc. 219-1 at 3. Her experience includes decades of research concerning educator sexual misconduct, work evaluating school policies and practices, and extensive consulting and expert work involving sexual abuse in educational settings. *Id.* Moreover, another court in this District has evaluated Dr. Shakeshaft's qualifications and concluded that she was qualified to testify on substantially the same subject matter. *See R.P. v. Santa Fe Pub. Schs.*, 2021 WL 1200599, at *4 (D.N.M.). The Court agrees with Judge Riggs's conclusion and reaches the same conclusion here. Dr. Shakeshaft is qualified to testify concerning professional practices relating to the prevention, detection, training,

supervision, reporting, and investigation of educator sexual misconduct.

Her qualifications, however, do not permit her to offer legal conclusions. APS specifically challenges her conclusion that "APS and its employees violated their own policies, as well as the state's and federal regulations." Doc. 215 at 7. The Court agrees with APS. Dr. Shakeshaft may testify concerning the professional standards and federal guidance that inform her opinions, but she may not opine that APS or its employees violated state or federal law or regulations. *See United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) ("An expert may not state legal conclusions drawn by applying the law to the facts").

Next, APS argues that Dr. Shakeshaft is unreliable under Rule 702 because she "uses the same template" and framework in every case in which she serves as an expert, "regardless of any distinctions between the facts or legal issues involved." Doc. 215 at 15. APS also contends that Dr. Shakeshaft improperly relied "solely on information furnished by Plaintiff's counsel," and delegated much of the review of APS's policies to her assistant, Ms. Meyland. *Id.* at 14–19; *see also* Doc. 233 at 2–7. Taken together, APS reasons that Dr. Shakeshaft did not independently analyze the facts of this case but instead applied "preconceived judgments, speculative opinions, and pure conjecture." Doc. 215 at 8. The Court disagrees and concludes that her methodology is sufficiently reliable under Rule 702. *See Kumho Tire Co.*, 526 U.S. at 150–52.

Dr. Shakeshaft's report describes a framework she developed through her research concerning educator sexual misconduct and "policies and practices related to the prevention" of that misconduct. Doc. 219-1 at 3. Her report also identifies multiple professional publications, governmental materials, standards on which her framework rests, and her process of comparing best practices to "deposition testimony and other documents" in this case. *Id.* at 5; *see R.P.*, 2021 WL 1200599, at *5–6 ("The Court finds that Dr. Shakeshaft's testimony is reliable and

relevant, and, importantly, will assist the trier of fact to understand or determine a fact in issue.”).

APS’s objections do not undermine the reliability of Dr. Shakeshaft’s methodology as a whole. To begin, the fact that Dr. Shakeshaft “uses the same template” when evaluating a school’s practices does not render her methodology unreliable. Doc. 215 at 15. A consistent analytical framework may be applied across cases, so long as the expert’s opinion reflects a reliable application of that framework to the facts of the particular case. *See* Fed. R. Evid. 702(d). Likewise, Dr. Shakeshaft was not required to conduct an independent factual investigation or personally obtain every document relevant to her analysis. *See Leon v. Kelly*, 2009 WL 1300936, at *18 (D.N.M.) (“The Court does not believe that an attorney’s selection of material for an expert to review necessarily infects that expert’s testimony with unreliability.”). Her report identifies a substantial body of records concerning APS’s policies and practices upon which she relied. *See* Doc. 219-1 at 7–15.

Dr. Shakeshaft’s extensive use of her assistant, Ms. Meyland, presents a closer question. Dr. Shakeshaft testified that Ms. Meyland would “read the policies,” “fill out the chart,” and “take notes” and then the two of them “would have a conversation by phone and [] go over them.” Doc. 233-1 at 11. According to Dr. Shakeshaft, the conversation about this case lasted “[p]robably 15 minutes.” *Id.* at 12.

Although Dr. Shakeshaft delegated many tasks to Ms. Meyland, the record does not establish that Ms. Meyland supplied the professional standards from which Dr. Shakeshaft’s opinions derive or that Dr. Shakeshaft delegated the ultimate opinions that she proposes to offer. Rather, Ms. Meyland assisted by organizing APS documents to which Dr. Shakeshaft applied her framework. Ms. Meyland’s assistance therefore does not render Dr. Shakeshaft’s testimony

categorically unreliable. *See Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002) ("An expert witness is permitted to use assistants in formulating [their] expert opinion, and normally they need not themselves testify."). Accordingly, the Court declines to exclude Dr. Shakeshaft's testimony wholesale on methodological grounds.

APS separately argues that several of Dr. Shakeshaft's opinions are not based on sufficient facts or data and therefore are not a reliable application of her methodology to the facts of this case. *See* Doc. 215 at 9–14; Doc. 233 at 7–10. Its principal objection is that Dr. Shakeshaft based her opinions concerning APS policies and practices on her "assumptions, which she had to make in light of the lack of information she possessed." Doc. 215 at 9. APS raises similar objections to her conclusions about its hiring practices and internal investigations. *See id.* at 12–13.

Rule 702 does not require an expert to consider every fact or piece of evidence in the record. *See Leon*, 2009 WL 1300936, at *18. Rather, the inquiry under Rule 702(b) is "whether the witness obtained the amount of data that the methodology itself demands." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008). But an opinion is inadmissible when "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Shakeshaft's opinions concerning APS's training cross the line set forth in *Joiner* in part. Her report concludes that APS's training of employees "was inadequate, and, as a consequence, Danny Aldaz sexually abused [Plaintiff]." Doc. 219-1 at 2. She similarly concludes that APS failed to "train students and parents to recognize sexual misconduct." *Id.* The difficulty here is that Dr. Shakeshaft testified that she "didn't have materials on the training" and so she "had to go from what was said in the depositions and others to describe the training."

Doc. 219-2 at 2. She expressly acknowledged that what she "read is an incomplete picture," so she had to "make some assumptions." Doc. 233-1 at 17, 20.

The Court agrees with APS that the admission of opinions or findings reached "without reviewing any of the relevant policies would be fundamentally prejudicial" and prevent the trier of fact from reaching its own conclusion. Doc. 215 at 14. On this record, Dr. Shakeshaft may not testify, based merely on the absence of materials provided to her, that APS provided no training, that particular training was absent, or that the training APS provided was inadequate. Nor may she testify that the absence or inadequacy of such training caused Aldaz's abuse without an adequate factual foundation for what training was in fact provided. *See generally Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1088 (10th Cir. 2000). She may, however, testify to best practices for training designed to prevent educator sexual misconduct and may evaluate training actually established by the evidence.

The same is true of Dr. Shakeshaft's opinions regarding APS's supervision of Aldaz. *See* Doc. 219-1 at 2. Dr. Shakeshaft concludes that the "supervision by APS of its employees, especially Danny Aldaz, was wholly inadequate for preventing the sexual abuse of [Plaintiff]" and that "the lack of rigorous unannounced supervision" meant that no adult noticed "Aldaz's inappropriate behavior, or the modifications to his classroom that hid the sexual assaults on his students." *Id.* Dr. Shakeshaft conceded, though, that she lacked documentation describing Aldaz's supervision before 2017 and does not "really know 'cause there's not much about what kind of supervision he got then." Doc. 233-1 at 46. The Court agrees with APS that such testimony should be limited in scope. Dr. Shakeshaft may not affirmatively testify that Aldaz was unsupervised, that APS conducted no supervision, or that particular supervisory practices were absent where she acknowledged that she does not know whether those practices occurred.

*See Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996). She may, however, testify to professional practices identified through her experience and research and compare those practices to supervisory practices reflected in the record. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995).

The same distinction applies to Dr. Shakeshaft's remaining opinions. *See* Doc. 215 at 12–13. She may evaluate APS practices and policies that are supported by record evidence and compare them with professional practices within her field. But she may not convert an absence of information into an affirmative conclusion that a policy or practice did not exist. Thus, to the extent that her findings concerning hiring or investigation rest on materials being absent from her review, she may not infer from that absence that APS lacked or failed to follow a particular practice. *See Joiner*, 522 U.S. at 146. To the extent that those opinions rest on identified policies, deposition testimony, investigative materials, personnel records, or other case-specific evidence, any dispute over the completeness or persuasiveness of that evidence is appropriately tested through cross-examination. *See Gomez*, 50 F.3d at 1519. Accordingly, the Court will not categorically exclude Dr. Shakeshaft's opinions for lack of sufficient facts or data. Dr. Shakeshaft may draw opinions from the evidence she reviewed, but she may not substitute the absence of evidence available to her for evidence that a particular APS policy, practice, training, or supervisory measure did not exist.

Finally, APS argues that portions of Dr. Shakeshaft's proposed testimony are irrelevant and would not assist the jury. *See* Doc. 215 at 22–27; Doc. 233 at 11–12. APS challenges Dr. Shakeshaft's opinions concerning Aldaz's "classroom setup" or "classroom modifications" and APS's practices for "reporting" and "investigating" claims of abuse. Doc. 215 at 23, 25. The Court agrees with APS in part.

Expert testimony must fit the facts of the case to assist the trier of fact. *See Daubert*, 509 U.S. at 591. Here, Dr. Shakeshaft states that the "modifications to [Aldaz's] classroom hid the sexual assaults on his students" and that Aldaz "arranged his classroom so that the storage closet was somewhat isolated." Doc. 215 at 24. But Dr. Shakeshaft acknowledged that she was uncertain whether the classroom configuration on which she relied was from Helen Cordero Elementary School. *See id.* at 25 ("I thought [the closet] was Helen Cordero, but it could have been another one."). Dr. Shakeshaft may therefore testify generally about the professional significance of secluded classroom spaces and may evaluate the classroom configuration actually supported by the evidence in this case. She may not, however, provide irrelevant testimony regarding a classroom configuration from a different school as though it existed at Helen Cordero, or opine that Aldaz intentionally modified his Helen Cordero classroom to facilitate or conceal abuse unless that conclusion is supported by case-specific evidence.[1] Subject to the limitations discussed above, APS has not shown that the probative value of Dr. Shakeshaft's remaining testimony is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. *See* Fed. R. Evid. 403. Any more particular objection under the Federal Rules of Evidence may be raised at trial.

## ***III. Conclusion***

For the reasons above, the Court grants in part and denies in part Plaintiff's Motion in Limine, Doc. 206, and grants in part and denies in part APS's Motion to Exclude or Limit Testimony under Federal Rule of Evidence 702, Doc. 215.

---

[1] APS's separate challenge to Dr. Shakeshaft's testimony concerning reporting and investigation does not warrant further limitation beyond those already discussed, so long as her opinions are tied to evidence in the record and bear on the detection or prevention of educator sexual misconduct.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales____________________
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.